STATE of Missouri, Respondent,

v.

Cornell TUBBS, Appellant.

No. 44931.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 12, 1983.

Motion for Rehearing or Transfer
Denied Sept. 14, 1983.

Robert Jackson Maurer, Kirkwood, for appellant.

Kristie L. Green, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant complains of the trial court's failure to submit to the jury his offered instruction on excusable homicide. The court instructed the jury on capital murder, second degree murder, and manslaughter. The jury returned a verdict of guilty on the second degree murder charge. Defendant was sentenced in accord with the jury's recommendation to 25 years imprisonment. We affirm.

Defendant does not contest the sufficiency of the evidence supporting his conviction. Rather, he alleges his testimony at trial presented sufficient evidence to mandate the submission of MAI–CR2d 2.28, alternative 3 to paragraph 2. That instruction permits the jury to acquit defendant if it finds the death to be the "result of accident or misfortune in heat of passion, upon sudden provocation, without any undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel and unusual manner." Note on Use 2 MAI–CR2d 2.28 requires the submission of an excusable homicide instruction, whether requested or not, if there is evidence to support it.

One morning defendant returned home from work unexpectedly. He observed a white van, belonging to victim, parked in front of his house. Defendant claimed to have heard rumors that his wife was having an affair with victim.

Defendant parked his car about a block and a half from his house and stated he was so upset he cried. A short while later he returned to his house on foot. He entered the house and heard noises coming from the basement. Defendant proceeded to his bedroom, removed a fully loaded .38 caliber pistol from the dresser and placed a pair of brass knuckles along with additional ammunition in his pants pocket.

When defendant came down the basement steps he claimed to have found his wife and victim in a compromising position. Defendant testified that when his wife turned and saw him, she screamed and ran upstairs. Defendant allegedly said to the victim, "I told you to stay away from my house." Victim was said to respond, "Boy, what in the hell are you doing home?"

Defendant claimed his intention in arming himself and going to the basement was to order victim to leave the house. Although victim was more than 20 years older than defendant he was also bigger; approximately seven inches taller and twenty to thirty pounds heavier.

Defendant and victim quickly developed a heated argument, both exchanging words. According to defendant, victim during this time "somehow walked up on me and knocked the gun out of my hand." Both parties went for the fallen gun at the same time. Defendant claimed victim acquired control of the gun first and raised it towards defendant. Defendant struck victim's arm and the gun discharged, the bullet hitting defendant's thigh.

The two men continued wrestling for the gun. Defendant testified that while the victim had control of the gun defendant tried to keep his finger in the ring behind the trigger to prevent the gun from firing. Nevertheless, the gun discharged at least two more times.

During the struggle defendant managed to punch victim in the face with his free arm. At that point defendant assumed control of the gun and struck victim on the head with it a couple of times. Defendant testified to being scared throughout the

encounter. Defendant eventually lost control of the gun, having dropped it on the floor. Victim then allegedly came after defendant. Defendant grabbed a nearby piece of lumber and struck the victim once or twice. Shortly thereafter the police arrived.

Victim was clearly conscious and alert, although badly beaten, when the police found him in the basement. Approximately one week later, while recovering from his injuries in the hospital, victim died. The coroner testified victim's death was due to a pulmonary embolism caused by multiple trauma to his body. Among the victim's injuries were six four-inch lacerations to the scalp, three fractured ribs, multiple bruises, including a black eye and another eye lacerated, and a fractured knee and skull. Although not contained in his official report, the coroner testified a contributing cause of death was a hemorrage to the stem portion of the brain.

Defendant testified he had no intention of killing the victim nor had he intended to hurt him.

The defense of excusable homicide implies an involuntary act on the part of the defendant. *State v. Merritt*, 540 S.W.2d 183, 185 (Mo.App.1976). Defendant's deliberate assault upon victim with a deadly weapon provoked the justifiable self-defensive reaction of victim which precipitated the extensive beating he took and from which he died. Victim's reaction to defendant's hostilities cannot amount to a "sudden provocation" of the defendant for it was defendant's act of intentionally threatening victim's life with a deadly weapon that caused the ensuing battle. In short, defendant may not claim the defense of accident to a death which results from combat begun by defendant's deliberate provocation.

Judgment affirmed.

CRANDALL, P.J., and REINHARD, J., concur.